I5N8FASC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

FASHION GROUP, LLC,

                    Plaintiff,

          v.                          18 Cv. 2959 (PGG)

JOHNNY'S SIGNATURE, INC., et al.,

                    Defendants.

------------------------------x

                                      May 23, 2018
                                      5:15 p.m.

Before:

                    HON. PAUL G. GARDEPHE,

                                      District Judge

                         APPEARANCES

WILSON KEADJIAN BROWNDORF LLP
      Attorneys for Plaintiff
BY:   JONATHAN J. FAUST

LAZARUS & LAZARUS
      Attorneys for Johnny Defendants
BY:   HARLAN M. LAZARUS

KORNFELD & ASSOCIATES P.C.
      Attorneys for Bilco Defendants and Burton Chen
BY:   RANDY M. KORNFELD

1          (Case called)

2          THE DEPUTY CLERK:  Plaintiff ready?

3          MR. FAUST:  John Faust, Wilson Keadjian Browndorf, for

4    plaintiff.  Ready, your Honor.

5          THE DEPUTY CLERK:  Defendant ready?

6          MR. KORNFELD:  Kornfeld & Associates, PC, by Randy

7    Kornfeld, for the Bilco defendants and Mr. Chen.

8          MR. LAZARUS:  Harlan Lazarus for the remaining

9    defendants.

10          THE COURT:  All right.  I thought there was some

11    effort ongoing to try to settle this case.  It's unclear to me

12    what the status of those efforts are.  Is it the parties' wish

13    that I rule on the pending application for preliminary

14    injunction because I am prepared to do that.  On the other

15    hand, if the parties are moving towards settlement, it might be

16    wasteful.  So what is going on?

17          MR. FAUST:  We have had some discussions with defense

18    counsel, not necessarily about resolving the case in toto, but

19    in terms of what to do about the inventory that the defendants

20    currently have.  We have been in discussions.  We have hit some

21    impasse as to how to handle that.  My client is prepared to

22    allow the defendants to dispose of that inventory, provided

23    that my client's interests are protected.  We have reached

24    agreement on some of those issues, but on others we haven't.

25    So we are not in a position to tell the Court that there is a

1    resolution.

2            I would also respectfully state that if the Court were

3    to rule on the injunction and were to grant the injunction, my

4    client would still be willing to discuss a reasonable

5    resolution with the defendants, notwithstanding the fact that

6    the goods are enjoined.

7            THE COURT:  What is the defendants' position?

8            MR. LAZARUS:  Your Honor, as I said a moment ago, I

9    represent the remaining defendants, which in particular are

10   what I have called, in general, the Johnny defendants.  Despite

11   their names, these defendants are lenders, and as lenders, they

12   have financed the purchase of the inventory from these

13   manufacturers, and in some instances loaned against the

14   accounts receivable.

15           The totals involved are in the multimillion dollars,

16   and the issue with respect to all of the defendants today, to

17   be clear again, as to the preliminary injunction, there is no

18   opposition whatever, except we would like the injunction to

19   carve out our right, the defendants' rights and my lender

20   clients' rights, to relabel the garments and sell them, so as

21   not to precipitate a disaster for either the lender or for the

22   manufacturing defendants.

23           As counsel has indicated, we are at an impasse as to

24   that issue, but that issue alone, in terms of resolving the

25   preliminary injunction.  So to that extent, your Honor, of

1   course it's not necessary for you to rule on the injunction; we

2   consent to it, with the carve-out on the issue of our right to

3   relabel.  As counsel knows, and would acknowledge I'm certain,

4   we have offered the goods up for inspection.  I am not sure why

5   they need to be inspected, but if they want to look, they can

6   look.  If they want some level of proof that they have been

7   reticketed, relabeled, we will give them that level of proof.

8        But the issue with respect to something over and above

9   that is an issue as to the plaintiff's entitlement ultimately

10  to money damages, because the impasse is with respect to what

11  happens to the sale proceeds if the sale is made.  In terms of

12  our discussions, that's where the impasse is, and I have

13  suggested that, as to that issue, we would want a hearing as to

14  whether the injunction should go that far, because we think

15  it's certainly appropriate that the injunction enjoin us from

16  selling mislabeled goods, but I don't see, and we have had

17  discussions, why the injunction should prevent us from

18  relabeling the goods and doing with the proceeds that which we

19  would normally do with the proceeds.  The lender needs to

20  recover its money.

21        That's where the impasse is.  As I said, we can agree

22  to everything in the requested injunction, but if we are going

23  to have a hearing, we are going to need a hearing on the

24  damages issue or the right to enjoin us from using those

25  proceeds, because we don't think it's appropriate.  We also

1    don't think, and Mr. Kornfeld will address it, that they can

2    show a likelihood of success as to a monetary damage claim in

3    the many millions of dollars.

4         MR. FAUST:  May I respond?

5         THE COURT:  I guess the first question is, do you

6    object to them relabeling the clothing accurately?

7         MR. FAUST:  We have no problem with them relabeling

8    the clothing.  Our issue is couple-fold.

9         First, one of the terms is that we believe that if we

10   can reach agreement that they sell the goods, they can recoup

11   their cost, but any profits should be escrowed or held aside.

12   And I would submit to your Honor that the case law, we believe,

13   is crystal clear that injunctions, in Lanham Act false

14   advertising cases and related cases, holds that an injunction

15   freezing inventory in aid of equitable claims, such as an

16   accounting or disgorgement of defendants' profits, which is

17   what we seek here, is perfectly appropriate.  That's to respond

18   to your Honor's question directly.

19        I would also submit, as your Honor made crystal clear

20   in the prior case, your Honor is considering the matter,

21   arguments, etc. that were presented to the Court already.  Some

22   of these issues are issues that I am encountering for the first

23   time.  For example, the notion of a disaster that the

24   defendants face, I would submit it's a disaster of their own

25   making.  If they didn't sell mislabeled goods, they wouldn't be

1    in this situation.  The notion that the Johnny defendants may

2    have some type of interest in the goods, I just learned that in

3    the hallway a few moments ago.

4         We had asked for testing, and counsel correctly states

5    that, when we were outside a moment ago, they offered it.  But

6    our position is, and remains, we caught the defendants

7    mislabeling goods.  We have rights that attach, which include

8    disgorgement of their profits.  And we believe the case law is

9    clear -- I can give your Honor some citations as I recall them,

10   or they can be later submitted -- that injunctions in aid of

11   equitable relief are totally appropriate and proper precisely

12   where there is a Lanham Act claim or the defendant seeks an

13   accounting.

14        Going back to the issues that your Honor had asked us

15   about, we don't see a big benefit to anybody just having goods

16   getting moldy in a warehouse.  Number one, we want those

17   profits secured, which means an understanding of what they

18   claim their profit margin to be on the sale of the goods.  We

19   also submit that the goods should be sold in different channels

20   of distribution.  One of our concerns is the defendants' entire

21   business -- there is case law I can quote -- was built -- they

22   got their toehold in the industry through their mislabeling.

23   They got introductions and relationships with retailers because

24   they were able to underprice everyone.  Why did they

25   underprice?  Because they were mislabeling.  Our concern is, if

1    we allow them to sell the correctly labeled goods back to the

2    same retailers at discounted prices, that's just enhancing

3    relationships that they developed through illicit means,

4    currying favor with retailers.

5         My understanding in copyright or other trademark

6    infringement cases is the defendant doesn't get to say, OK, you

7    caught me, I will take off the false label and now I can sell.

8    Typically, what happens is those goods are donated or

9    destroyed.  We are not suggesting they need to be donated or

10   destroyed.  We just don't want them to continue to benefit,

11   albeit in a different way, from the illicit goods.  I can give

12   your Honor a list of the conditions or the terms that we had

13   proposed, if you'd like, but I think those are the two big

14   stumbling blocks.

15        MR. LAZARUS:  Very briefly, your Honor.

16        THE COURT:  I am getting the sense, and you tell me if

17   I am wrong, I am getting the sense we are kind of at an

18   impasse.  I don't know whether we are or not, but what I am

19   hearing from Mr. Faust is he has certain things he wants, and

20   what I am hearing from you is, at least at present, I don't

21   think you're prepared to give him what he wants.  So I am

22   starting to get the sense that there might be an impasse.

23        Anyway, go ahead.

24        MR. LAZARUS:  First, to be very clear, we are willing

25   to give something to the plaintiff by way of what I am going to

I5N8FASC

1    call collateral.

2        Just one brief remark.  Several weeks ago, in fact, I

3    gave counsel the loan documents, which very clearly provide

4    that the lender has a security interest in all of the goods

5    involved, etc.  So to say he just learned of it is somewhat a

6    skewed remark.

7        Second, in terms of the disgorgement of profits from

8    illegal goods, if the returned goods -- mind you, your Honor,

9    that's what we are talking about.  These goods were principally

10   at Burlington stores and Ross stores.  They have returned them

11   to the manufacturers, subject to the lender's lien, and there

12   are no profits because we didn't get paid.  Nobody got paid.

13   And if the goods are relabeled properly, there's no profits

14   from illegal goods.  So the argument that we shouldn't be

15   allowed to profit from illegal goods is perhaps apt, but once

16   they are relabeled, they are no longer illegal.

17       Those realistically are what our points are.  We would

18   love to work something out, but standing here before you, I

19   agree we are at somewhat of an impasse and, realistically, I am

20   almost thinking, perhaps with your Honor's guidance, we could

21   come to some sort of consensual agreement on this issue.

22   That's why I am making the pitch.

23       THE COURT:  Well, ordinarily I don't get involved in

24   settlement discussions because the parties are generally

25   uncomfortable with that.  So if you needed the involvement of a

1    third party, it would be my typical practice to refer you to

2    the assigned magistrate judge, which I am happy to do.

3            So, really, I need to know from the lawyers whether

4    they want to take another stab at trying to resolve this,

5    either between themselves or in front of the magistrate judge,

6    or whether you want me to rule on the motion.  I am at your

7    service.  Just tell me what you want.

8            MR. KORNFELD:  From our standpoint, your Honor, we

9    definitely would like to take another stab.  I am not saying

10   that we are close and we haven't reached at least a partial

11   impasse.  I think a lot of what counsel is asking for is what

12   he would be entitled to if he won his case, but not at this

13   juncture, and I think the cases in the circuit support that.

14   Some of the requests he is making I believe are premature.  I

15   don't know that he can tell us who we can or cannot sell

16   correctly labeled goods to once they are in fact relabeled, and

17   what channels of distribution we should use.  The fact of the

18   matter is there are only limited outlets for these goods.  Ross

19   and Burlington are two of the most favorable, and to prohibit

20   us from selling relabeled goods to those substantial entities,

21   it would greatly hamper the resale of those goods, and that is

22   not to anybody's benefit.

23           I would certainly get on board with trying some more

24   to see if we could fashion some sort of preliminary remedy that

25   makes everybody somewhat happy so that we can move forward in

1    the case in chief or settle it.

2           THE COURT:  What do you say, Mr. Faust, are you

3    interested in trying to bring this to resolution through

4    settlement?  It sounds like it would have to be in front of the

5    magistrate judge.

6           MR. FAUST:  I am certainly amenable to trying to work

7    through a resolution.  As I have mentioned, we believe that we

8    are entitled to relief, monetary and otherwise, that would be

9    best served by the goods ultimately being sold, monetized.  I

10   don't believe that a ruling -- were your Honor to grant the

11   injunction -- prevents that, because we remain equally ready to

12   discuss a resolution, even were a preliminary injunction to

13   issue, just like we were prepared to discuss a resolution

14   during the pendency of this motion.

15           I would again just reiterate that injunctions in aid

16   of equitable relief are entirely proper.  Injunctions freezing

17   inventory, where the plaintiff seeks an accounting and

18   disgorgement of profit, is absolutely appropriate.  There is

19   Second Circuit case law.  There is Southern District case law.

20   Judge Rakoff recently decided a case to that end.  So I don't

21   believe we are asking for anything we are not entitled to.  We

22   can certainly brief that issue, but the case law, we believe,

23   is crystal clear that injunctions, to protect the inventory and

24   freeze the inventory, are absolutely proper.  I can give your

25   Honor a couple of citations I have if you're so inclined.

I5N8FASC

1    THE COURT:  No, I don't think I need to see any

2    authority on that point.

3        So just to bring the matter to a head, what I am

4    hearing from your adversaries is that they would be interested

5    in having more discussions with you to try to reach a

6    negotiated resolution, perhaps with the involvement of a

7    magistrate judge.  So the question is really whether you are

8    agreeable to that or whether you want me to rule on your motion

9    today, which I am prepared to do.  But I am also prepared to do

10   a referral today to Judge Moses, who is the assigned magistrate

11   judge, and I am sure that she could get you on her calendar,

12   and maybe you can reach a negotiated resolution.  It won't be

13   one that pleases everybody, because no settlement is entirely

14   satisfactory to both sides, but my sense is, from hearing

15   everybody, to be honest, I suspect if you got in front of

16   Magistrate Judge Moses, I suspect you could bring this thing to

17   a close.

18       Again, just tell me what you want.  I am prepared to

19   rule today on the motion.  I am also prepared to do a referral

20   to Magistrate Judge Moses today.  And I am prepared to do both

21   I guess.  I am prepared to rule on the motion and do a referral

22   to the magistrate judge, if that's what the parties want.  You

23   have got to tell me what you want.

24       MR. FAUST:  I would suggest a ruling and a referral.

25   If we can work it out, we can work it out.  I am incentivized

1   to work it out because inventory locked in a warehouse doesn't

2   do anybody any good.  But, with respect, preparing to come down

3   here every few weeks doesn't do the parties any great service

4   either.

5           THE COURT:  Sir, something else you wanted to say?

6           MR. LAZARUS:  If you're going to rule, I would

7   specifically ask that you carve out from the injunction, if

8   that's the way your ruling goes, a provision that allows the

9   plaintiff to come in, look at what we have, and then allows us

10  to relabel it, with a full accounting down the road of profits

11  and losses and the like.  But there would be, as counsel has

12  acknowledged, no particular benefit in these goods sitting in a

13  warehouse, and I think he said growing mold.  So we are

14  prepared to accept your ruling, but I think that under all of

15  these circumstances, at this early stage, it is appropriate to

16  allow us to relabel the goods.

17          I also want to just very briefly address the relative

18  guilt, if you will, of the clients.  I would put witnesses on

19  should we have the opportunity and will have the opportunity.

20  The fault lies overseas with the factories that we buy the

21  goods from, with purchase orders that say they should be a

22  particular fiber content, and then they come to us and they get

23  into the stores, and then we get into a mess.  But as I said,

24  your Honor, the bottom line is what we would like, in

25  particular, is to have any injunction your Honor might issue be

1    limited to future acts, and as to this inventory, after

2    allowing plaintiff to inspect, to require us to account, that

3    we should be able to relabel and move forward.

4         MR. FAUST:  Your Honor, just responding briefly.  The

5    notion that defendants want to blame overseas suppliers or

6    factories, as your Honor also mentioned in the prior case,

7    counsel statements don't constitute admissible evidence.  Also,

8    with all due respect, it defies credulity.  We are talking

9    about multiple brands, but from different retailers on

10   different days; this wasn't just one lot of one particular

11   brand of product.  Perhaps there is ultimate issues as to who

12   is responsible, or how far this goes remains to be seen, but I

13   don't believe that counsel can absolve the defendants before

14   your Honor through statements that, in our view, defy

15   credulity.

16        In terms of a carve-out, again, we think that a

17   carve-out is contrary to law, and we are willing to work with

18   them, provided our interests are protected.

19        MR. KORNFELD:  I wanted to submit another nonprobative

20   counsel statement, if I may.  One of the threshold issues that

21   we have is that we are not sure who the plaintiff is, that they

22   even constitute a competitor under the statute.  We have done

23   our best due diligence up to a point to try to ascertain who

24   they are, and from what we have determined till now, they are

25   not in this marketplace.  They don't even have an RN number to

1  sell goods in the United States.  We have checked in the

2  industry, with the factors, with the vendors; nobody knows who

3  they are.  That is just a point that I wanted to make, in terms

4  of this dueling credibility, as to who is to blame here and who

5  may not be to blame.  But at this point, we are not even

6  certain that Fashion Group is anything but a straw man for some

7  other entity or individual who wants to be a competitor but

8  isn't one.

9           THE COURT:  I am prepared to rule.

10          This is an action for false advertising under the

11  Lanham Act.  The complaint also pleads unfair competition,

12  unjust enrichment, and tortious interference with prospective

13  economic advantage under New York law, along with violations of

14  the General Business Law, Sections 349 and 350.  The matter is

15  on my calendar for purposes of a hearing on plaintiff's motion

16  for a preliminary injunction.

17          The background facts are as follows:  Plaintiff is a

18  Delaware corporation with a place of business in New York City.

19  Citing the complaint, Dkt. No. 1, paragraph 11.  Plaintiff

20  sells clothing and accessories to retailers and wholesalers,

21  including to such retailers as Ross stores, Burlington stores,

22  Boscovs, Amazon, and Gabriel Brothers.  *Id.* paragraph 2.  I

23  will refer to these retailers collectively as "the retailers."

24  Defendants are five clothing manufacturers and their owners.

25  According to plaintiff, defendants have sold tens of millions

I5N8FASC

```
1    of dollars worth of clothing to the retailers.  Citing the

2    complaint, paragraphs 2 and 3.

3            I'm sorry, gentlemen.  I am just going to have to take

4    a brief recess.  I will be back to you very shortly.

5            (Recess)

6            MR. FAUST:  Your Honor, I was just speaking to the

7    clerk.  In the interim, I believe counsel reached somewhat of

8    an agreement, if we could adjourn the hearing date for six

9    weeks.  In the meantime, if your Honor makes a referral, we

10   will undertake to see if we can resolve the issues on the

11   pending application.

12           THE COURT:  All right.

13           Is that your wish?

14           MR. KORNFELD:  Yes.

15           MR. LAZARUS:  Your Honor, I would like to add one

16   other request.  I would like the opportunity to put in an

17   affidavit before your Honor rules, if we can't work it out, so

18   that there is a complete record.  So if we can't resolve it,

19   your Honor will have a full record upon which to make your

20   ruling.

21           MR. FAUST:  I have no objection, although I would like

22   an opportunity to reply.

23           THE COURT:  Sure.

24           MR. FAUST:  My understanding, counsel advised me

25   during the break before that they were receiving goods -- they
```

1  had previously disclosed there is about 100,000 units in the

2  warehouse, that they are getting returns into the warehouse

3  from the retailers counsel mentioned.  The extension of the

4  restraint applies to those goods as well.

5  MR. LAZARUS:  Of course.

6  THE COURT:  Just so the record is clear, I will

7  continue the temporary restraining order in effect.  I will

8  adjourn the hearing for six weeks.  I will do a referral -- I

9  assume you're prepared to see the magistrate judge as soon as

10  she is prepared to see you.

11  MR. FAUST:  Yes, your Honor.

12  THE COURT:  So I will do a referral today to

13  Magistrate Judge Moses.  I will ask her to see you as soon as

14  she can.  Hopefully, you can work the matter out in front of

15  her.  If you can't, we will have a date approximately six weeks

16  hence.  So that would bring us to, I guess, early July.  We

17  will issue an order setting the adjourned date.  My deputy has

18  stepped out, but I suspect it will be in the first or second

19  week of July.

20  MR. FAUST:  I am away the third week.  So the first or

21  second week.

22  THE COURT:  We will try for the second.

23  MR. FAUST:  Thank you.

24  THE COURT:  Thank you, all.

25  (Adjourned)