FASHION GROUP, LLC and FUNGYUN, INC.   )
  )
    Plaintiff,   )
  )
    v.   )   Case No. 1:18-cv-02959 (PGG)
  )
JOHNNY'S SIGNATURE, INC., JOHNNY'S   )   **JURY TRIAL DEMANDED**
SIGNATURE INT'L., INC., DEEPAK SAJNANI,   )
BILCO IMPORT & EXPORT, INC., BILCO   )
INDUSTRIES, INC., BURTON CHEN (a/k/a Billy   )
Chen, a/k/a William Chen, a/k/a Zhiquan Chen),   )
JERRY LAU and DOUBLE TOP   )
INTERNATIONAL, INC.   )
  )
    Defendants.   )

## AMENDED COMPLAINT

Plaintiff Fashion Group, LLC and Fungyun, Inc. on behalf of themselves and their affiliated and related companies (collectively, "FASHION GROUP"), hereby allege their Amended Complaint, by and through their attorneys Wilson Keadjian Browndorf, LLP, against Defendants Johnny's Signature, Inc., Johnny's Signature Int'l., Inc., Deepak Sajnani, Bilco Import & Export, Inc., Bilco Industries, Inc., Burton Chen (a/k/a Billy Chen, a/k/a William Chen, a/k/a Zhiquan Chen), Jerry Lau and Double Top International, Inc. (together, "Defendants"), as follows:

## NATURE OF THE CASE

1.     FASHION GROUP brings this action under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and New York statutory and common law, seeking equitable relief and damages based on Defendants' deceptive practices and unfair business competition. In particular, Defendants falsely describe and mislabel the cheap and inferior fabric and textile fibers used in their garments as being

more expensive and superior fabric in order to gain an illicit, undeserved and unfair pricing advantage when competing for business.

2.  FASHION GROUP and Defendants each have a cognizable commercial interest in the apparel industry as they desire to sell apparel, directly and indirectly, to major retailers including Ross Stores, Burlington Stores, Boscovs, Amazon, Gabriel Brothers and others (the "Retailers").

3.  While the full scope of Defendants' misconduct is not yet known, upon information and belief, Defendants secured, and continue to secure, tens of millions of dollars in orders from Retailers by selling certain sweater, cardigans and related items that were falsely labeled, packaged and advertised as if they consisted of a very desirable blend of 78% rayon fibers and 22% nylon fibers (the "Specified Fiber Blend").

4.  Laboratory testing shows that the Defendants' garments marketed, labeled and sold as if they comprised of the Specified Fiber Blend (the "Defendants' Garments") actually consist of cheaper and inferior fabric and textile fibers: (i) typically less than 78% -- and sometimes 0% -- rayon; (ii) 0% nylon; and (iii) large and undisclosed quantities of polyester.

5.  Some of the Defendants' Garments are 100% polyester with, upon information and belief, many improperly using recycled polyester fibers.

6.  Defendants secured large orders from the Retailers by offering the Defendants' Garments for sale at very low prices – far below the prices typical for such garments comprised of the Specified Fiber Blend.

7.  Fabric using the Specified Fiber Blend is much more expensive and higher quality than the fabric actually used in Defendants' Garments. Thus, Defendants' mislabeling of its fabric and textile fibers – passing off cheaper and inferior fabric as if it were the Specified Fiber Blend –

enables Defendants' to underbid other industry participants while obscuring the reason for Defendants' low prices (i.e., Defendants are selling lower quality goods).

8.     Defendants unfairly and deceptively use their illicit price advantage to gain revenues, profits, market share, market profile and prestige, relationships with Retailers, manufacturing volume and other benefits that accompany securing large garment orders from nationally known Retailers.

9.     Indeed, upon information and belief, Defendants' false advertising, and deceptive and anticompetitive conduct, enabled Defendants to gain a foothold in the apparel industry -- such that Defendants' rise as an industry participant is the direct result of their unlawful behavior.

10.     Defendants' fraudulent low-ball pricing threatens the viability of the marketplace and prevents fair competition.  Monetary damages cannot repair the loss of free market competition and the resulting effects on FASHION GROUP if Defendants' competitively unfair conduct continues.

11.     FASHION GROUP is entitled to an accounting of Defendants' profits, treble damages, reimbursement of FASHION GROUP's losses, attorneys' fees, costs and injunctive relief requiring that Defendants: (i) cease their wrongful advertising and sale of mislabeled goods; (ii) institute appropriate testing protocols to ensure that Defendants do not sell mislabeled goods in the future; and (iii) preserve their remaining inventory and records for inspection.

12.     Upon information and belief, Defendants' misconduct includes products and product lines beyond the Defendants' Garments specifically identified herein.

## PARTIES

13.     Fashion Group, LLC is a Delaware limited liability company, with a place of business at 1221 Avenue of the Americas, New York, New York 10020.

14.     Fungyun, Inc. is a Delaware corporation, with offices in California, and is the corporate parent of Fashion Group, LLC.

15.     Upon information and belief, Defendant Johnny's Signature, Inc. is a New York corporation registered with the Secretary of State, with its registered place of business at 50 West 34th Street, New York, New York.

16.     Upon information and belief, Defendant Johnny's Signature Int'l., Inc. is a New York corporation registered with the Secretary of State, with its registered place of business at 50 West 34th Street, New York, New York.

17.     Upon information and belief, Defendant Deepak Sajnani is an individual located at 50 West 34th Street, New York, New York 10001. Upon information and belief, Sajnani is the owner, principal and primary official of both Johnny's Signature, Inc. and Johnny's Signature Int'l, Inc. (collectively, "Johnny's"),

18.     Upon information and belief, Defendant Bilco Import & Export, Inc. is a New York corporation, registered with the New York Secretary of State, with places of business at 5043 206th Street, Oakland Gardens, New York, New York, 214 West 39th Street, Suite 301, New York, New York and 512 7th Avenue #3702, New York, New York.

19.     Upon information and belief, Defendant Bilco Industries, Inc. is a New York corporation, registered with the New York Secretary of State, with its places of business at 5043 206th Street, Oakland Gardens, New York, New York and 214 West 39th Street, Suite 301, New York, New York and 512 7th Avenue #3702, New York, New York. Bilco Import & Export, Inc. and Bilco Industries, Inc. are collectively referred to as "Bilco".

20.     Upon information and belief, Defendant Burton Chen (a/k/a Billy Chen; "Chen") is an individual who resides at 4132 Little Neck Parkway, Little Neck, New York. Upon information and belief, Chen is the owner, principal and a controlling senior official of Bilco.

21. Upon information and belief, Defendant Double Top International, Inc. ("Double Top"), is a New York corporation registered with the Secretary of State, with its principal place of business at 214 West 39th Street, Room 508, New York, New York.

22. Upon information and belief, Defendant Jerry Lau is an individual who resides at 7120 17th Avenue, Brooklyn, New York. Upon information and belief, Lau is the owner, principal and controlling official of Double Top and a senior official of Bilco.

23. Upon information and belief, all of the Defendants work and worked together as part of a scheme to profit from the sale of mislabeled goods to Retailers.

24. Upon information and belief, in furtherance of that jointly conceived and effectuated scheme, the corporate form or formalities of Defendants are not strictly observed.

25. Upon information and belief, the individual defendants completely dominate the corporate Defendants respecting the sale of the mislabeled goods, fail to observe corporate formalities and misuse their domination and control over the corporate Defendants to commit and conceal the wrongs complained of.

## JURISDICTION AND VENUE

26. This action arises under the Lanham Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.*, and New York statutory and common law.

27. This Court has jurisdiction over the subject matter of the First and Seventh Claims For Relief set forth in this Complaint pursuant to 15 U.S.C. §§ 1114 and 1125 and 28 U.S.C. §§ 1331 and 1338(b).

28. Pursuant to 28 U.S.C. §§ 1367(a) and 1338(b), this Court has supplemental jurisdiction over the remaining Claims for Relief of this Complaint, which arise under the statutes and common law of New York, because those claims are so related to the federal claims arising under the Lanham

Act that they form part of the same case or controversy and derive from a common nucleus of operative facts.

29. This Court has jurisdiction over Defendants and venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants are located in this judicial district, Defendants transact, solicit and conduct business in this judicial district, and a substantial part of the activity about which FASHION GROUP complains has taken place, and is continuing to take place, in this judicial district.

## FACTS

### Background

30. FASHION GROUP seeks to directly and indirectly market, commercialize and sell textile goods, apparel and accessories to retailers and wholesalers.

31. FASHION GROUP has direct and indirect stakes in the market in which Defendants sell mislabeled goods.

32. For example, Fungyun, Inc. is an importing, trading and logistics company that fulfills the needs of retail and consumer manufacturing apparel companies nationwide.

33. Fugnyun, Inc. and its customers compete directly and indirectly with the Defendants.

34. Fungyun,Inc. and its customers sell garments that compete directly with the Defendants' Garments and other goods.

35. Upon information and belief, Defendant Chen (the owner of Bilco) owns or otherwise controls the rights to brand names, including "Hayden Park".

36. Upon information and belief, Defendant Bilco (and Chen through Bilco) owns or otherwise controls the rights to brand names including "Melrose Chic", "Esperanza", "Gaia Contemporary Home", "Gray Earth" and "Noblezen".

37.     Upon information and belief, Defendant Double Top owns or otherwise controls the rights to brand names including "Mountain Fog", "Karson & Taylor", "Anna Rose", "Eclectic Studio" and "Hudson Lane".

38.     Upon information and belief, Bilco and Double Top are all directly or indirectly owned, operated and controlled by Lau and Chen.

39.     Upon information and belief, Defendants Sajnani and Johnny's provide financing and related assistance to the other Defendants, enabling and facilitating the other Defendants' sale of mislabeled goods.

40.     Upon information and belief, Defendants coordinated, cooperated and conspired to secure large garment orders from the Retailers by selling, marketing and commercializing intentionally mislabeled garments under the Melrose Chic, Esperanza, Hayden Park, Eclectic Studio, Hudson Lane and other brand names.

**Defendants Win Garment Sales With Artificially Low Pricing**

41.     Upon information and belief, since 2016 (and perhaps earlier) Defendants participated in the manufacture and sale of Defendants' Garments and other goods to the Retailers.

42.     Defendants specifically claimed that the Defendants' Garments are comprised of the Specified Fiber Blend (i.e., a blend of 78% rayon and 22% nylon), which is a relatively high quality fabric for the target market.

43.     The Retailers are value oriented stores that seek to provide their customers with steep savings.

44.     Upon information and belief, the Retailers ordered and purchased Defendants' Garments in large volume because Defendants offer low prices for garments ostensibly comprised of

the Specified Fiber Blend.

45. Upon information and belief, but for the Defendants' ability to sell the Defendants' Garments to the Retailers at very low cost Defendants' would not have been able to establish a commercial relationship with the Retailers.

46. Upon information and belief, the aggregate annual gross sales totals of the orders that the Retailers placed with Defendants exceeds One Hundred Million Dollars ($100,000,000).

47. Upon information and belief, the aggregate annual net profits to Defendants on the orders that the Retailers placed with Defendants exceeds Fifty Million Dollars ($50,000,000).

48. Large garment orders from the Retailers: (i) are a source of significant profits; (ii) establish relationships with Retailers that lead to further business; (iii) make products and brands visible in the marketplace; (iv) provide a volume of business that promote the seller's other projects and activities; and (v) provide a volume of business that give the seller leverage in the marketplace.

**Defendants Described and Labeled Their Garments As Using the Specified Fiber Blend**

49. Upon information and belief, when competing for the Retailers' business the Defendants claimed and represented to the Retailers that Defendants' Garments use the Specified Fiber Blend.

50. Defendants placed labels on Defendants' Garments and associated packaging (the "Labels") where fabric-identifying information is frequently and traditionally conveyed.

51. Defendants' Labels were, are and were intended to be visible on Defendants' Garments and packaging.

52. Defendants' Labels specifically claim and claimed that the fabric and textile fiber content of Defendants' Garments is the Specified Fiber Blend (i.e., 78% rayon and 22% nylon).

53. An RN number is an identification number registered with the Federal Trade

Commission that can be used in place and instead of a company's name.

54. RN numbers must be listed on product labels in order to identify the company that produced the goods.

55. The Labels on the Defendants' Garments include RN # 139136 or RN# 151759.

56. Upon information and belief, RN# 139136 is registered to Defendant Bilco, indicating that Defendants' Garments bearing this RN were made by, for or through Bilco.

57. Upon information and belief, RN# 151759 is registered to Defendant Double Top, indicating that Defendants' Garments bearing this RN were made by, for or through Double Top.

58. Thus, Defendants' Labels show that their goods were all made by or for Bilco or Double Top.

**Garments Must Be Labeled and Described Correctly**

59. It is of obvious importance for any label, including the Labels, to accurately portray the fabric, textile fiber content and features of the item it purports to describe.

60. Fabric and textile fiber content are important and inherent characteristics of any garment.

61. Purchasers of garments – whether the Retailers or an individual retail consumer -- need to know the correct fabric and textile fiber content in order to, among other things: (i) compare the nature, quality, attributes and characteristics of the garment in absolute terms and relative to other goods; (ii) understand the basis for any price difference between comparable products; and (iii) properly to care for and clean the item.

62. The correct identification of the fabric and textile fibers comprising a garment is so important that the Federal Trade Commission ("FTC"), the Federal Textile Fiber Products Identification Act, 15 U.S.C. §70 *et seq.* (the "Textile Act") and the rules promulgated under the

Textile Act specifically provide that inaccurate labels on, or false descriptions of, fabric or textile fibers constitute unfair and deceptive acts and practices.

63. The FTC specifically has concluded that using garment labels that misstate the precise composition or blend of fibers in any fabric constitutes false, deceptive and unfair acts and practices.

64. For example, in In re: Verrazzano Trading Corp., 91 FTC 888, the FTC found a company to have engaged in false, deceptive and unfair conduct where the company incorrectly labeled its textile fiber products as containing 50% cotton, 35% polyester and 15% nylon, when the products actually contained different fibers and different amounts of listed fibers.

65. In In re: Verrazzano Trading Corp., the FTC noted that "[m]isstatements of the fiber content of fabrics are, by definition, misrepresentations," which are "materially misleading". The FTC continued that the "fiber composition of a fabric is likely to affect its perceived value in the eyes of both [] manufacturers and [] consumers," causing "manufacturers and consumers to misestimate the value of the fabrics they are purchasing, as well as their characteristics."

**Defendants' Garments Are Mislabeled & Fail Fabric/Fiber Testing**

66. Between January 2018 and March 21, 2018, random samples of the Defendants' Garments (the "Defendants' Sample Garments") were purchased from different Retailers on different days and from different locations.

67. In all, 27 different Defendants' Sample Garments were acquired.

68. All of the Defendants' Sample Garments bore Labels: (i) listing RN # 139136 (i.e., showing that the garment was made by/for Defendant Bilco) or RN#151759 (i.e., showing that the garment was made by/for Defendant Double Top); and (ii) describing the fabric and textile fiber content as being the Specified Fiber Blend (i.e., 78% rayon and 22% nylon).

69. The Defendants' Sample Garments were then tested by Bureau Veritas, a reputable,

independent industry testing service that is commonly used for fabric and fiber identification and textile analysis.

70. Bureau Veritas' test results determined that *each and every one of the Defendants' Sample Garments failed to meet the Label claim regarding the fabric and textile fiber content* – i.e., none of the Defendants' Sample Garments consisted of the Specified Fiber Blend.

**Test (5918) 023-0162**

71. Bureau Veritas report (5918) 023-0162, dated January 23, 2018, tested a Defendants' Sample Garment bearing a Label that: (i) listed RN 139136 (i.e., the Bilco identifier); and (ii) declared that the garment consisted of the Specified Fiber Blend (i.e., 78% rayon and 22% nylon). **(Exhibit A)**

72. Bureau Veritas concluded that the Defendants' Sample Garment failed inspection because it tested out as 100% polyester (*i.e.,*, it contained no rayon or nylon, and failed to disclose the polyester present). (*Id.*)

**Test (5918) 022-0232**

73. Bureau Veritas report (5918) 022-0232, dated January 29, 2018, tested a Defendants' Sample Garment bearing a Label that: (i) listed RN 139136 (i.e., the Bilco identifier); and (ii) declared that the garment consisted of the Specified Fiber Blend (i.e., 78% rayon and 22% nylon). **(Exhibit B)**

74. Bureau Veritas concluded that the Defendant' Sample Garment failed inspection because it tested out at 100% polyester (*i.e.,*, it contained no rayon or nylon, and failed to disclose the polyester present). (*Id.*)

75. The Defendants' Sample Garment that was the subject of Bureau Veritas report (5918) 022-0232 bore Defendants' Esperanza brand name.

76.     Bureau Veritas concluded that "THE FIBER CONTENT LABEL IS INAPPROPRIATE. RECOMMENDATION: 100% POLYESTER". (*Id.*)

**Test (5118) 038-0011**

77.     Bureau Veritas report (5118) 038-0011, dated February 7-12, 2018, tested three (3) different Defendants' Sample Garments consisting of long sleeve cardigans purchased at Retailer Burlington bearing Labels that: (i) listed RN 139136 (<u>i.e.,</u> the Bilco identifier); and (ii) declared that the garments consisted of the Specified Fiber Blend (i.e., 78% rayon and 22% nylon). **(Exhibit C)**

78.     Bureau Veritas concluded that the cardigans failed inspection because:

    (a)  One sample tested out at 100% polyester (no rayon or nylon);

    (b)  One sample tested out at 75% rayon and 25% polyester (no nylon); and

    (c)  One sample tested out at 74% rayon and 26% polyester (no nylon).

*Id.*

79.     The Defendants' Sample Garments that were the subject of Bureau Veritas report (5118) 038-0011 bore the Defendants' Esperanza and Hayden Park brand names.

80.     For each of these three Defendants' Sample Garments, Bureau Veritas concluded that "THE ACTUAL FIBER CONTENT DOES NOT CONFORM TO THE CLAIMED LABEL CONTENT".

**Test (5118) 037-0138**

81.     Bureau Veritas report (5118) 037-0138, dated February 6-12, 2018, tested a further nine (9) different Defendants' Sample Garments consisting of additional long sleeve cardigans purchased at Retailer Ross bearing Labels that: (i) listed RN 139136 (<u>i.e.,</u> the Bilco identifier); and (ii) declared that the garments consisted of the Specified Fiber Blend (i.e., 78% rayon and 22% nylon). **(Exhibit D)**

82. Bureau Veritas concluded that these Defendants' Sample Garments also failed inspection because:

      (a) Three samples tested out at 69% rayon and 31% polyester (no nylon);

      (b) One sample tested out at 68% rayon and 32% polyester (no nylon);

      (c) One sample tested out at 70% rayon and 30% polyester (no nylon);

      (d) Two samples tested out at 71% rayon and 29% polyester (no nylon);

      (e) One sample tested out at 77% rayon and 23% polyester (no nylon); and

      (f) One sample tested out at 79% rayon and 21% polyester (no nylon).

*Id.*

83. The Defendants' Sample Garments that were the subject of Bureau Veritas report (5118) 037-0138 bore Defendants' Esperanza, Anna Rose and other brand names.

84. For each of these nine test Defendants' Sample Garments, Bureau Veritas concluded that "THE ACTUAL FIBER CONTENT DOES NOT CONFORM TO THE CLAIMED LABEL CONTENT".

**Test (5118) 052-0036**

85. Bureau Veritas report (5118) 052-0036, dated February 28, 2018, tested a further eight (8) different Defendants' Sample Garments consisting of more long sleeve cardigans purchased at Retailers Boscov's, Burlington and Ross bearing Labels that: (i) listed RN 139136 (<u>i.e.</u>, the Bilco identifier); and (ii) declared that the Defendants' Sample Garments consisted of the Specified Fiber Blend (i.e., 78% rayon and 22% nylon).  (**Exhibit E**)

86. Bureau Veritas concluded that these Defendants' Sample Garments also failed inspection because:

      (a) Three samples tested out at 79% rayon and 21% polyester (no nylon);

(b) Two samples tested out at 69% rayon and 31% polyester (no nylon);

(c) One sample tested out at 70% rayon and 30% polyester (no nylon);

(d) One sample tested out at 77% rayon and 23% polyester (no nylon); and

(e) One sample tested out at 75% rayon and 25% polyester (no nylon).

*Id.*

87.    The Defendants' Sample Garments that were the subject of Bureau Veritas report (5118) 052-0036 bore Defendants' Esperanza, Hayden Park, Karson & Taylor and Eclectic brand names.

88.    For each of these eight test Defendants' Sample Garments, Bureau Veritas concluded that "THE ACTUAL FIBER CONTENT DOES NOT CONFORM TO THE CLAIMED LABEL CONTENT".

**Test (5118) 054-0097**

89.    Bureau Veritas report (5118) 054-0097, dated March 1, 2018, tested a further seven (7) different Defendants' Sample Garments purchased at Retailers Ross and Gabriel Brothers bearing Labels that: (i) listed RN 139136 (i.e., the Bilco identifier); and (ii) declared that the garments consisted of the Specified Fiber Blend (i.e., 78% rayon and 22% nylon). **(Exhibit F)**

90.    Bureau Veritas concluded that these Defendants' Sample Garments also failed inspection because:

(a) Four samples tested out at 68% rayon and 32% polyester (no nylon);

(b) Two samples tested out at 70% rayon and 30% polyester (no nylon); and

(c) One sample tested out at 100% polyester (no rayon and no nylon).

*Id.*

91.    The Defendants' Sample Garments that were the subject of Bureau Veritas report

(5118) 054-0097 bore Defendants' Anna Rose and Esperanza brand names.

92.　For each of these Defendants' Sample Garments, Bureau Veritas concluded that "THE ACTUAL FIBER CONTENT DOES NOT CONFORM TO THE CLAIMED LABEL CONTENT".

**DEFENDANTS CONDUCT HURTS PLAINTIFFS' COMMERCIAL INTERESTS**

93.　Bureau Veritas testing shows that Defendants' Label claim that Defendants' Garments are composed of the Specified Fiber Blend is actually and literally false.

94.　Defendants' Sample Garments: (i) typically contain less than 78% -- and in some cases 0% -- rayon; (ii) 0% nylon; and/or (iii) contain undeclared substantial percentages of polyester.

95.　Upon information and belief, the undeclared polyester used in Defendants' Garments is "recycled" polyester, which is an inferior type of polyester fiber.

96.　Fabric containing polyester fiber -- much less 100% polyester and/or recycled polyester -- is less expensive than fabric consisting of the Specified Fiber Blend.

97.　Garments containing polyester fiber -- much less 100% polyester and/or recycled polyester -- are generally considered to be of inferior quality to merchandise consisting of the Specified Fiber Blend.

98.　The fabric and textile fiber content of garments is and was a material consideration in the competition for the Retailers' business because they correlate to, among other things: (i) the quality and perceived quality of the garment; and (ii) the unit price of the garment, since different types of fabric and textile fibers have different costs.

99.　Although Defendants claim, declare and label the Defendants' Garments as consisting of the Specified Fiber Blend, Defendants secretly use different, cheaper, inferior fabric.

100.　Defendants' false description of the fabric and textile fiber content of the Defendants' Garments gives Defendants an unfair, inappropriate and illegal competitive advantage when

competing for business.

101. Defendants' misrepresentation of the true fabric and textile fiber content of Defendants' Garments conceals the reason for the low pricing of Defendants' Garments, and their lower quality, thereby preventing fair comparison and competition.

102. Accordingly, Defendants unfairly have secured orders, profits, market positions, market relationships and the like to the detriment of Plaintiffs.

103. Retailers that would have ordered from Plaintiffs or Plaintiffs' customers instead order from Defendants based on Defendants unfair practices and false advertising.

104. For example, when Retailers place their orders with Defendants (instead of Fungyun, Inc. or Fungyun Inc.'s customers), Fungyun, Inc. directly and indirectly loses out on revenues, profits, market share, market profile and prestige, relationships with Retailers, manufacturing volume and other benefits that accompany securing such orders.

105. Defendants' are liable in an amount to be determined at trial, but not less than Fifty Five Million Dollars ($55,000,000), consisting of not less than Fifty Million Dollars ($50,000,000) in annual profits on the orders that Defendants secured unfairly, plus an additional Five Million Dollars ($5,000,000) in indirect and consequential damages flowing from the loss of relationships, market share, volume business and the like associated with those orders.

106. Plaintiffs are entitled to the trebling of any damages award to: (i) punish and deter flagrant, knowing and willful misconduct by the Defendants; and (ii) account for the intangible benefits that Defendants derived from their misconduct, including the fact that their anticompetitive and illicit behavior gave rise to, and established, Defendants' position in the market as a competitor.

107. Defendants' misconduct, if allowed to continue, threatens to cause irreparable injury to FASHION GROUP, including the permanent skewing of the marketplace and the prevention of fair

competition that will prevent FASHION GROUP from developing, entering, maintaining, receiving or expanding business.

108. As Defendants continue to compete unfairly and secure orders and market share through deceptive practices, they diminish the business opportunities for FASHION GROUP, and threaten the very viability of FASHION GROUP's business.

109. Defendants' misconduct also confuses and misleads the public.

110. FASHION GROUP has no adequate remedy at law for the continuing injury it will suffer if Defendants' conduct is permitted to continue.

111. Upon information and belief, Defendants' mislabeling of product extends beyond the Defendant' Garments described herein – including other products, product lines and fabric types.

**Alter Ego Allegations**

112. Upon information and belief, Defendants conspired together to sell mislabeled garments to the Retailers and others.

113. Upon information and belief, Defendants interacted directly with the Retailers regarding orders for Defendants' Garments and manage Retailer accounts for the Defendants.

114. Upon information and belief, Bilco, Chen, Lau and Double Top work in concert with Johnny's and Sajnani regarding the Retailers' orders.

115. Upon information and belief, Sajnani, Lau and Chen intentionally use the corporate Defendants interchangeably in order to obscure their misconduct.

116. Upon information and belief, the Defendants equalize or shared between them the profits made from mislabeled goods.

117. Upon information and belief, each Defendant is the alter ego of the other Defendants.

118. Upon information and belief, Defendants used each other's corporate form interchangeably and share the illicit profits that they have earned between them.

119. Upon information and belief, all Defendants knowingly work with and through Defendant Bilco and Double Top to obtain and sell the intentionally mislabeled Defendants' Garments and to introduce mislabeled Defendants' Garments into interstate commerce.

**FIRST CLAIM FOR RELIEF**
**False Advertising, False Description and Unfair Competition**
**Monetary Damages**
**Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B)**

120. FASHION GROUP repeats and realleges each and every allegation set forth in paragraphs 1 through 119 of this Complaint.

121. The Lanham Act prohibits false and misleading descriptions of products and services in interstate commerce. 15 U.S.C. §1125(a)(1)(B)

122. Defendants and FASHION GROUP are industry participants that seek to manufacture, market, distribute, sell and otherwise commercialize garments and other apparel and fabric.

123. The Lanham Act was designed and intended to protect against duplicitous conduct by industry participants (such as Defendants) which results in unfair competition.

124. Defendants' deceptive mislabeling of Defendants' Garments was a false description of material fact or materially false representation of Defendants' Garments that was likely and intended to – and, in fact did – influence the Retailers' decisions to purchase Defendants' Garments.

125. The mislabeling of the fabric and/or textile fiber content used in textile goods is a deceptive act and unfair business practice under the Textile Act. (FASHION GROUP is not asserting a private right of action under the Textile Act. Rather, the Textile Act makes clear that false statements regarding the content of fabric and textile fiber are material misrepresentations, and

deceptive and unfair competition).

126. Defendants' deceptive mislabeling of the fabric and textile fiber content of Defendants' Garments relates to an inherent and important characteristic that defined the products being offered for sale.

127. Fabric that contains polyester is less expensive than fabric that is composed of the Specified Fiber Blend, i.e., a blend of 78% rayon and 22% nylon.

128. Upon information and belief, products containing polyester are viewed as inferior to products that are comprised of a blend of 78% rayon and 22% nylon -- this is especially true for products composed of 100% polyester or products containing recycled polyester fiber.

129. Defendants' false advertising and mislabeling of the fabric and textile fiber content of Defendants' Garments creates a substantial, unfair and undeserved competitive advantage for Defendants in the sale and other commercialization of textile goods.

130. Defendants' deceptive mislabeling and misrepresentation of the fabric used for Defendants' Garment enables Defendants to offer the Retailers fraudulently and artificially low pricing.

131. Defendants' false descriptions of the qualities and characteristics of its product enables Defendants to obscure the reason for the Defendants' low pricing – i.e., Defendants hide and obscure the fact that the Defendants' Garments are made from different, cheaper and inferior fabric.

132. Upon information and belief, Retailers were deceived by Defendants' misconduct.

133. Defendants' deceptive mislabeling of Defendants' Garments is and was a false and misleading commercial advertisement under the Lanham Act.

134. Defendants' Garments have been sold in interstate commerce, and have been shipped to, and are available in, retail stores nationwide.

135.  Defendants' false description and mislabeling of the fabric and textile fiber content used in Defendants' Garments constitutes false advertising and other misconduct in violation of Section 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1125(a)(1)(B).

136.  As a direct and proximate result of the Defendants' wrongful acts, Defendants unfairly secure commercial sales, business relationships, market prestige, profits and other commercial benefits.

137.  As a direct and proximate result of the Defendants' wrongful acts, FASHION GROUP is entitled to recover monetary damages representing Defendants' profits from the sale of mislabeled goods in an amount to be proven at trial but not less than Fifty Five Million Dollars ($55,000,000).

138.  On information and belief, Defendants' unfair competition through false descriptions and advertising of Defendants' Garments is deliberate intentional and willful, entitling FASHION GROUP to treble damages (i.e., $165,000,000) and the award of its costs and attorney's fees under 15 U.S.C. §1117(a).

139.  Plaintiffs are entitled to the trebling of any damages award to: (i) punish and deter flagrant, knowing and willful misconduct by the Defendants; and (ii) account for the intangible benefits that Defendants derived from their misconduct, including the fact that their anticompetitive and illicit behavior gave rise to, and established, Defendants' position in the market as a competitor.

### SECOND CLAIM FOR RELIEF
#### Deceptive Acts and Practices
#### Monetary Damages
#### Under N.Y. Gen. Bus. Law § 349(h)

140.  FASHION GROUP repeats and realleges each and every allegation set forth in paragraphs 1 through 139 of this Complaint.

141.  Defendants' above-described conduct constitutes deceptive acts or practices in the

conduct of any business, trade or commerce or in the furnishing of any service in this state.

142. Defendants' conduct is in violation of applicable FTC regulations and the Textile Act, and do not qualify for any safe harbor.

143. As a direct and proximate result of the actions of Defendants alleged above, FASHION GROUP is entitled to recover an amount to be proven at trial but not less than Fifty Five Million Dollars ($55,000,000).

144. On information and belief, Defendants' unfair competition through false descriptions and advertising of Defendants' Garments is deliberate intentional and willful, and a direct threat to FASHION GROUP, entitling FASHION GROUP to treble damages (i.e., $165,000,000) and the award of its costs and attorney's fees.

**THIRD CLAIM FOR RELIEF**
**False Advertising – Monetary Damages**
**Under N.Y. Gen. Bus. Law § 350**

145. FASHION GROUP repeats and realleges each and every allegation set forth in paragraphs 1 through 144 of this Complaint.

146. Defendants' above-described conduct constitutes deceptive and false advertising in the conduct of any business, trade or commerce and the sale of goods in New York.

147. As a direct and proximate result of the actions of Defendants alleged above, FASHION GROUP is entitled to recover an amount to be proven at trial but not less than Fifty Five Million Dollars ($55,000,000).

148. On information and belief, Defendants' unfair competition through false descriptions and advertising of Defendants' Garments is deliberate intentional and willful, and a direct threat to FASHION GROUP, entitling FASHION GROUP to treble damages (i.e., $165,000,000) and the award of its costs and attorney's fees.

## FOURTH CLAIM FOR RELIEF
### Common Law Unfair Competition

149.     FASHION GROUP repeats and realleges each and every allegation set forth in paragraphs 1 through 148 of this Complaint.

150.     Defendants' actions described above constitute common law unfair competition under the common law of New York and other states.

151.     Defendants unfairly and unlawfully benefit from its deceptive acts or practices.

152.     On information and belief, the actions of Defendants' described above at all times relevant to this action have been, and continue to be, willful and intentional.

153.     Defendants' acts complained of herein are deceptive, misleading and unfair, and constitute unfair competition in violation of the common law of the State of New York.

154.     As a direct and proximate result of the actions of Defendants alleged above, FASHION GROUP is entitled to recover an amount to be proven at trial but not less than Fifty Five Million Dollars ($55,000,000).

## FIFTH CLAIM FOR RELIEF
### Unjust Enrichment

155.     FASHION GROUP repeats and realleges each and every allegation set forth in paragraphs 1 through 154 of this Complaint.

156.     By the conduct described above, Defendants unjustly retain benefits and funds to the detriment of FASHION GROUP, in a manner that violates fundamental principles of justice, equity, and good conscience.

157.     Defendants' misconduct enables Defendants to unfairly secure contracts, orders, benefits, prestige, relationships, market share, revenues, and profits.

158.     On information and belief, the actions of Defendants described above have at all

times relevant to this action been intentional and willful, and represent a direct threat to FASHION GROUP.

159.   As a direct and proximate result of the actions of Defendants alleged above, FASHION GROUP is entitled to recover an amount to be determined at trial, but not less than Fifty Five Million Dollars ($55,000,000).

**SIXTH CLAIM FOR RELIEF**
**<u>Tortious Interference with Prospective Economic Advantage</u>**

160.   FASHION GROUP repeats and realleges each and every allegation set forth in paragraphs 1 through 159 of this Complaint.

161.   At all relevant times, Defendants were aware that FASHION GROUP had the opportunity to bid, directly and/or indirectly, for business and sales from the Retailers.

162.   Through the false advertising and mislabeling misconduct described above, Defendants knowingly, intentionally and through wrongful means induced the Retailers to do business with Defendants.

163.   Defendants used unfair, deceptive and wrongful means to undermine, subvert and coopt fair competition for the Retailers' business.

164.   Defendants unfairly obtain the benefits, prestige, relationships, market share, revenues, and profits associated with the Retailers' business.

165.   On information and belief, the actions of Defendants described above have at all times relevant to this action been willful and intentional.

166.   As a direct and proximate result of the actions of Defendants alleged above, FASHION GROUP is entitled to recover an amount to be determined at trial, but not less than Fifty Five Million Dollars ($55,000,000).

## SEVENTH CLAIM FOR RELIEF
### Injunctive Relief

167. FASHION GROUP repeats and realleges each and every allegation set forth in paragraphs 1 through 166 of this Complaint.

168. The Lanham Act prohibits false and misleading descriptions of products and services in interstate commerce. 15 U.S.C. §112(a)

169. The Lanham Act was designed to protect against duplicitous conduct by industry participants which results in unfair competition.

170. Defendants deceptively and falsely mislabel the fabric and textile fiber content of Defendants' Garments.

171. Defendants Labels are literally false as they inaccurately describe the fabric and textile fiber content of the Defendants' Garments.

172. Defendants' deceptive mislabeling of the fabric and textile fibers in garments relates to an inherent and important characteristic that defined the product being offered for sale.

173. Defendants created, and are perpetuating, a substantial, unfair and undeserved competitive advantage respecting in the manufacture and sale of garments.

174. Defendants' deceptive mislabeling and misrepresentation of the fabric and textile fiber content used in Defendants' Garments enables Defendants to unfairly underbid competitors respecting the sale of ostensibly similar garments.

175. Defendants' deceptive mislabeling and misrepresentation of the fabric and textile fibers content in Defendants' Garments enables Defendants to confuse Retailers and the public.

176. Defendants' deceptive mislabeling of Defendants' Garments was a material misstatement that was likely and intended to – and, in fact did and does – influence purchasing

decisions regarding Defendants' Garments.

177. Defendants' misconduct constitutes deceptive business practices and unfair competition.

178. Defendants are perpetuating and continuing their misconduct, mislabeling and false advertisement.

179. Retailers placing bulk garment orders, and individual consumers buying individual garments, are and were deceived by Defendants' mislabeling and false descriptions of product.

180. Retailers purchased Defendants' Garments based on the fraudulently and artificially low price of the goods, unaware that Defendants were passing off cheaper quality goods.

181. Upon information and belief, Defendants continue to try to solicit and secure orders for, and sell and ship, products using false labeling and false descriptions of the fabric and textile fiber content of Defendants' Garments.

182. Defendants' Garments are sold in interstate commerce, and have been shipped to, and are available in, retail stores nationwide.

183. Defendants' false description and mislabeling of the fabric used in Defendants' Garments constitute false advertising and other misconduct in violation of Section 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1125(a).

184. On information and belief, the actions of Defendants described above at all times relevant to this action have been, and continue to be, willful and intentional.

185. If Defendant is not enjoined from continuing misconduct and false advertising FASHION GROUP will suffer irreparable damage to its business as Defendants continue to seize market share and market position, and unfairly price out competition through the wrongful use of mislabeled goods.

186.   Legitimate and honest industry participants cannot fairly compete with Defendants' fraudulent pricing scheme.

187.   Defendants' misconduct also poses an ongoing threat to the Retailers and members of the public who are induced to buy Defendants' Garments based on false descriptions of the fabric and fiber content of the goods, and who are misled as to the nature, quality and characteristics of the garments they are purchasing.

188.   FASHION GROUP has no remedy at law to redress the loss of its business, the loss and interference with Retailer relationships and the ongoing fraud on the Retailers and the public.

189.   An injunction is needed to: (i) bar Defendants from mislabeling their garments; (ii) direct Defendants to implement appropriate testing protocols to prevent future mislabeling; and (iii) preserve and maintain Defendants' remaining inventory and records so that appropriate investigation can be undertaken to ascertain the extent of Defendants' malfeasance.

190.   On information and belief, Defendants' deliberate unfair competition through mislabeling, false descriptions and advertising of Defendants' Garments has been, and continues to be, deliberate intentional and willful, entitling FASHION GROUP to the award of its costs and attorney's fees.

**PRAYER FOR RELIEF**

WHEREFORE, FASHION GROUP prays that this Court enter judgment in its favor on each and every claim for relief against Defendants as set forth above and award it relief including, but not limited to, the following:

A.      An Order declaring that Defendants' mislabeling of garments constituted and constitutes false advertising, unfair competition, and deceptive and unlawful trade practices under federal and state law, as detailed above;

B. An injunction: (i) preliminarily and permanently enjoining Defendants and their employees, officers, directors, principals, subsidiaries, related companies, and all persons in active concert or participation with any of them from advertising, promoting, commercializing or selling mislabeled garments; and (ii) requiring that Defendants implement appropriate testing protocols to ensure that Defendants comply with any future fabric and textile fiber representations;

C. An Order directing Defendants to immediately remove mislabeled goods from commerce and preserve them, and related records, for further testing as to their true fabric and textile fiber content;

E. An Order directing Defendants to file with this Court and serve on FASHION GROUP's attorneys, thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

F. An Order jointly and severally requiring Defendants to account for and pay to FASHION GROUP any and all profits arising from Defendants' unlawful activities described above, and that such profits be increased in accordance with 15 U.S.C. § 1117 and other applicable laws;

G. An Order jointly and severally requiring Defendants to pay FASHION GROUP an amount as yet undetermined, but not less than Fifty Five Million Dollars ($55,000,000), resulting from Defendants' unlawful activities described above, and trebling such amount for payment to FASHION GROUP of One Hundred Sixty Five Million Dollars ($165,000,000) in accordance with 15 U.S.C. § 1117 and other applicable laws;

H. An Order jointly and severally requiring Defendants to disgorge to FASHION GROUP any and all unjustly-gotten gains by virtue of Defendants' unlawful activities described above;

I.  An Order awarding FASHION GROUP additional compensatory, punitive, exemplary and/or statutory damages in an amount to be determined at trial;

J.  An Order jointly and severally requiring Defendants to pay FASHION GROUP's costs and attorneys' fees in an amount as yet undetermined under 15 U.S.C. § 1117 and other applicable laws; and

K.  Any other relief as the Court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, FASHION GROUP demands trial by jury in this action of all issues triable by jury in this matter.

Dated: June 7, 2018

Respectfully submitted,

Jonathan J. Faust
WILSON KEADJIAN BROWNDORF LLP
114 West 47th St., 18th Fl
New York, NY 10036
Telephone: (212) 66-09555
jfaust@wkbllp.com

*Attorneys for FASHION GROUP*