UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FASHION GROUP, LLC and
FUNGYUN, INC.,

                        Plaintiffs,

            -against-

JOHNNY'S SIGNATURE, INC.,
JOHNNY'S SIGNATURE INT'L, INC.,
DEEPAK SAJNANI, BILCO IMPORT &
EXPORT, INC., BILCO INDUSTRIES,
INC., BURTON CHEN (a/k/a Billy Chen,
a/k/a William Chen, a/k/a Zhiquan Chen),
JERRY LAU, and DOUBLE TOP
INTERNATIONAL, INC.,

                        Defendants.

**ORDER**

18 Civ. 2959 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

        This is an action for false advertising under the Lanham Act. Plaintiffs allege that Defendants – clothing manufacturers and their owners – misrepresent the fabric of their garments, enabling them to sell tens of millions of dollars' worth of clothing to retailers at a lower price than their competitors. (Am. Cmplt. (Dkt. No. 46) ¶¶ 1-7, 30) Pending before the Court is Plaintiffs' motion to file a Second Amended Complaint. (Dkt. No. 73) For the reasons stated below, Plaintiffs' motion will be granted.

## BACKGROUND

### I.    FACTS

        Plaintiff Fashion Group, LLC is a Delaware limited liability company with offices in New York. (Am. Cmplt. (Dkt. No. 46) ¶ 13) Plaintiff Fungyun, Inc. is a Delaware corporation with offices in California, and is the "corporate parent" of Fashion Group. (Id. ¶ 14) Plaintiffs bring this action "on behalf of themselves and their affiliated and related companies."

(Id. at 1) Plaintiffs "seek[] to directly and indirectly market, commercialize[,] and sell textile goods, apparel[,] and accessories to retailers and wholesalers," and have "direct and indirect stakes in the market in which Defendants sell mislabeled goods." (Id. ¶¶ 30-31)

Defendants Johnny's Signature, Inc., Johnny's Signature International, Inc., Bilco Import & Export, Inc., Bilco Industries, Inc., and Double Top International, Inc. are New York corporations with offices in New York. (Id. ¶¶ 15-16, 18-19, 21) Defendant Deepak Sajnani owns the Johnny's Signature entities; Defendant Burton Chen owns the Bilco entities; and Defendant Jerry Lau owns Double Top. (Id. ¶¶ 17, 20, 22)

The Amended Complaint alleges that Defendants affix labels to their clothing that misrepresent the fabric that the clothing is made of. (Id. ¶ 1) Defendants' labels state that their clothing is a blend of 78% rayon and 22% nylon, which Plaintiffs characterize as a "relatively high[-]quality fabric." (Id. ¶¶ 42, 52, 68) Defendants' clothing is not actually made of this fabric, however: Between January and March 2018, Plaintiffs randomly purchased twenty-seven samples of Defendants' clothing, and had the fiber content tested by a textile testing service. (Id. ¶¶ 66-69) The textile tester reported that none of the garments tested contained the advertised fabric blend ("Textile Report"). (Id. ¶ 70)

According to the Amended Complaint, Defendants conspired to "profit from the sale of mislabeled goods" to retailers such as Ross, Burlington, Boscovs, Amazon, and Gabriel Brothers ("Retailers"). (Id. ¶¶ 2, 23) As a result, Defendants have sold tens of millions of dollars' worth of clothing to Retailers using "different, cheaper[,] and inferior" fabric. (Id. ¶¶ 2, 3, 99, 131) Plaintiffs complain that "Retailers that would have ordered from Plaintiffs or Plaintiffs' customers instead order from Defendants based on Defendants['] unfair practices and false advertising." (Id. ¶ 103) "For example, when Retailers place their orders with Defendants

2

(instead of Fungyun, Inc. or Fungyun Inc.'s customers), Fungyun, Inc. directly and indirectly loses out on revenues, profits, market share, market profile and prestige, relationships with Retailers, manufacturing volume[,] and other benefits that accompany securing such orders." (Id. ¶ 104)

The Amended Complaint pleads claims for (1) false advertising, false description, and unfair competition in violation of the Lanham Act; (2) deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349(h); (3) false advertising in violation of N.Y. Gen. Bus. Law § 350; (4) unfair competition; (5) unjust enrichment; and (6) tortious interference with prospective economic advantage. (Id. ¶¶ 120-190)

## II. PROCEDURAL HISTORY

The Complaint was filed by Plaintiff Fashion Group on April 4, 2018. (Dkt. No. 1) On April 6, 2018, Judge Kimba Wood – sitting in Part One – signed a temporary restraining order that, inter alia, (1) enjoined Defendants from advertising or selling garments that incorrectly state their fabric content; (2) directed Defendants to preserve certain mislabeled garments; and (3) directed Defendants to identify the location and amount of any remaining inventory of certain mislabeled garments in their control. (TRO (Dkt. No. 24) at 2-3)

On April 16, 2018, this Court held a hearing on Plaintiffs' request for a preliminary injunction (1) barring Defendants from advertising or selling garments that incorrectly state their fabric content; (2) directing Defendants to institute testing protocols to ensure that their goods do not misstate their fabric content; and (3) directing Defendants to preserve and maintain their inventory of mislabeled garments. (See id. at 1; Pltf. PI Br. (Dkt. No. 28) at 5) At that hearing, the parties informed the Court that they had nearly reached an agreement as to injunctive relief, and requested that the temporary restraining order remain in place while the parties completed their negotiations. (See Dkt. Nos. 29, 35, 36, 37)

3

Plaintiffs filed the Amended Complaint on June 13, 2018, adding Fungyun as a named Plaintiff. (Dkt. No. 46)

On July 11, 2018, this Court entered a Consent Order resolving Plaintiffs' application for a preliminary injunction. (Dkt. No. 50) In that Order, Defendants (1) conceded that Plaintiffs' Textile Report is accurate, and that all of the inventory enjoined by the temporary restraining order is mislabeled; (2) agreed to stop selling mislabeled garments, and agreed to have "future production runs of garments tested by a reputable, widely-accepted testing service"; (3) agreed to pay $75,000 toward Plaintiffs' attorney's fees; and (4) agreed to maintain records concerning the enjoined inventory. (Id. at 2–3) The Consent Order permits Defendants to relabel and sell the enjoined inventory. (Id. at 3)

On July 16, 2018, Defendants filed Answers to the Amended Complaint. (Dkt. Nos. 51, 54-55)

On July 30, 2018, Plaintiffs informed the Court that they seek to file a Second Amended Complaint ("SAC") that adds a new plaintiff – NYC Alliance Co. LLC. (Dkt. No. 61) On August 13, 2018, this Court entered a Case Management Plan providing that "Defendants shall indicate whether they consent to the filing of a Second Amended Complaint no later than August 17, 2018." (Dkt. No. 62)

On August 20, 2018, Plaintiffs informed the Court that Defendants would not consent to the filing of the SAC, and requested leave to file it. (Dkt. No. 63) On November 29, 2018, this Court held a conference concerning Plaintiffs' proposed motion for leave to amend, and set a briefing schedule. (Dkt. No. 71) On January 3, 2019, Plaintiffs moved to file a SAC. (Dkt. No. 73)

## III. PROPOSED SECOND AMENDED COMPLAINT

The SAC does not alter the allegations or causes of action in the Amended Complaint – it only seeks to add NYC Alliance as a Plaintiff. (Compare Am. Cmplt. (Dkt. No. 46) with SAC (Dkt. No. 75-1))

According to Plaintiffs, NYC Alliance is the entity that noticed Defendants' "impossibly low pricing" in the first place: "NYC Alliance contacted Fungyun about its concerns because Fungyun was NYC Alliance's logistical provider and supplier. . . . After failing to identify legitimate grounds for Defendants' continuing price advantages, the decision was made to have an industry standard laboratory test the Defendant[s'] goods." (Lowney Aff. (Dkt. No. 74) ¶¶ 4-6) After discovering that Defendants had mislabeled their garments, NYC Alliance and Fungyun "discussed how to proceed":

> The officials involved in these discussions for Fungyun and NYC Alliance expressed literal fear for their personal safety. Having uncovered a multi-million dollar, international conspiracy involving possibly hundreds of millions [of] dollars, Fungyun and NYC Alliance were worried that the Defendants might be serious criminals who might stop at nothing to protect their enterprise.
>
> In addition to the perceived risk of physical harm, Fungyun and NYC Alliance feared becoming industry pariahs. The companies discussed the fact that unmasking Defendants' mislabeling scheme would cause problems for the large Retailers who are essential to Fungyun's and NYC Alliance's businesses.
>
> . . . .
>
> NYC Alliance expressed particular concern and reluctance to proceed, because it dealt directly with Retailers such that its relationships seemed most directly at risk.
>
> . . . .
>
> Accordingly, Fungyun had one of its wholly owned subsidiaries (Fashion Group) commence this action.

(Id. ¶¶ 8-10, 14, 16)

5

"[A]fter the above-listed risks appeared to subside, Fungyun agreed to join the lawsuit," and Plaintiffs filed the Amended Complaint – which added Fungyun as a named Plaintiff – on June 13, 2018. (Id. ¶ 17; Am. Cmplt. (Dkt. No. 46)) NYC Alliance was "still reluctant to join the suit due to lingering concerns" at that time, but by late July 2018 NYC Alliance informed Plaintiffs that "it was willing to join the suit." (Lowney Aff. (Dkt. No. 74) ¶¶ 18, 20)

## DISCUSSION

### I.  LEGAL STANDARDS

A party may amend a pleading with the court's leave, and the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); see also Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234 (2d Cir. 1995) ("The Supreme Court has emphasized that amendment should normally be permitted, and has stated that refusal to grant leave without justification is 'inconsistent with the spirit of the Federal Rules.'") (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). "Under this liberal standard, a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile." Agerbrink v. Model Serv. LLC, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016) (citing Foman, 371 U.S. at 182; McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007); In re Alcon Shareholder Litigation, 719 F. Supp. 2d 280, 281 (S.D.N.Y. 2010)).

Further, "Rule 21 grants [the court] broad discretion to permit a change in the parties at any stage of a litigation." Int'l Union of Bricklayers & Allied Craftsmen Local No. 5 v. Hudson Valley Dist. Council Bricklayers & Allied Craftsmen Joint Benefit Funds, 162 F.R.D. 17, 24 (S.D.N.Y.1995) (citing Andujar v. Rogowski, 113 F.R.D. 151, 154 (S.D.N.Y. 1986)). "The court's decision to permit joinder is based on whether the claims of the additional plaintiffs

6

arose out of the same or separate acts or occurrences, whether the party seeking joinder has unnecessarily delayed the proceedings, and whether the nonmovant would be prejudiced by the addition." Ford v. Air Line Pilots Ass'n Int'l, 268 F. Supp. 2d 271, 295–96 (E.D.N.Y. 2003) (citing Four Star Capital Corp. v. NYNEX Corp., 183 F.R.D. 91, 98 (S.D.N.Y. 1997)).

District courts "ha[ve] broad discretion in determining whether to grant leave to amend." Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000).

## II. ANALYSIS

Here, Defendants do not contend that they would be prejudiced by the proposed amendment. (See Def. Opp. (Dkt. No. 79) at 8) Moreover, it is undisputed that NYC Alliance's claims arise out of the same facts and occurrences described in the Amended Complaint. (See id. at 5-7) Defendants argue, however, that Plaintiffs (1) unduly delayed in adding NYC Alliance as a plaintiff; and (2) have acted in bad faith. (See id. at 9-13)

### A. Delay

Plaintiffs argue that there was no undue delay here: This action was filed on April 4, 2018 (Dkt. No. 1), and on July 30, 2018, Plaintiffs advised Defendants and the Court that they sought to add NYC Alliance as a named plaintiff (Dkt. No. 61). Accordingly, Plaintiffs provided notice before the initial pretrial conference and before discovery had begun. (Pltf. Br. (Dkt. No. 76) at 11-12) Defendants argue, however, that NYC Alliance could have been a named plaintiff from the outset of this action, and that the joinder of NYC Alliance is not the result of Plaintiffs learning new information. (Def. Opp. (Dkt. No. 79) at 9-10) According to Defendants, NYC Alliance's professed concern about joining this action is "utterly ridiculous" and not a legitimate excuse for delay. (Id. at 10)

The Court concludes that there has been no undue delay here. Plaintiffs waited only four months before seeking to join NYC Alliance, and did so before the parties began

7

engaging in discovery, or any dispositive motion was filed. Defendants cite no case in which a court found undue delay under similar circumstances. Indeed, every case cited by Defendants involves a delay of at least one year. See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 328 (1971) (more than one year delay); Cohain v. Klimley, No. 08 Civ. 5047 (PGG), 2010 WL 3701362, at *7 (S.D.N.Y. Sept. 20, 2010), aff'd sub nom., Sissel v. Rehwaldt, 519 F. App'x 13, 15 (2d Cir. 2013) (two year delay); Reisner v. Gen. Motors Corp., 511 F. Supp. 1167, 1173–74 (S.D.N.Y. 1981), aff'd, 671 F.2d 91 (2d Cir. 1982) (more than four year delay); Smith v. Manhattan Club Timeshare Ass'n, 944 F. Supp. 2d 244, 258 (S.D.N.Y. 2013) (two year delay); G-I Holdings, Inc. v. Baron & Budd, No. 01 Civ. 0216 (RWS), 2004 WL 374450, at *3 (S.D.N.Y. Feb. 27, 2004) (delay of "several years"); Priestley v. Am. Airlines, Inc., No. 89 Civ. 8265 (JMC), 1991 WL 64459, at *2 (S.D.N.Y. Apr. 12, 1991) (more than one year delay).

In sum, whether or not NYC Alliance's professed concern about joining this lawsuit is legitimate or sincere, there has been no undue delay in seeking to add NYC Alliance as a named plaintiff.

**B.  Bad Faith**

Defendants argue that Plaintiffs' motion to amend should be denied because they have acted in bad faith: When Plaintiffs first raised the issue of joining NYC Alliance as a plaintiff, they stated that joinder of NYC Alliance "would enable the removal of Fashion Group as a party." (Def. Opp. (Dkt. No. 79) at 6) Defendants argue that this statement by Plaintiffs is tantamount to an admission that Fashion Group did not have standing to bring this action, and that accordingly Plaintiffs have acted in bad faith since the outset of this case. (Id. at 11-13) Plaintiffs respond that Fashion Group has standing to bring its claims, and that the delay in adding NYC Alliance as a plaintiff stemmed solely from NYC Alliance's fear of retribution. (Pltf. Brf. (Dkt. No. 76) at 20-22)

8

"While not much case law exists in this Circuit about what constitutes bad faith for the purpose of denying a motion for leave to amend a pleading, '[a] finding that a party is seeking leave to amend solely to gain a tactical advantage . . . supports a finding that such an amendment is made in bad faith.'" Youngbloods v. BMG Music, No. 07 Civ. 2394 (GBD) (KNF), 2011 WL 43510, at *9 (S.D.N.Y. Jan. 6, 2011) (quoting Oneida Indian Nation of N.Y. State v. County of Oneida, 199 F.R.D. 61, 80 (N.D.N.Y.2000)). "[I]t is the defendants' burden to show bad faith." Blagman v. Apple, Inc., 307 F.R.D. 107, 113 n.4 (S.D.N.Y. 2015) (citing Charney v. Zimbalist, No. 07 Civ. 6272 (AKH) (GWG), 2014 WL 963734, at *1 (S.D.N.Y. Mar. 12, 2014)).

As an initial matter, Plaintiffs' willingness to drop Fashion Group as a plaintiff if NYC Alliance is added as a plaintiff does not demonstrate that Fashion Group lacks standing to bring this action. Stated another way, Defendants have not shown that Fashion Group misrepresented, in the Complaint, that it is a seller of apparel goods that was injured by Defendants' mislabeling of their garments.

Moreover, Defendants did not challenge Fashion Group's standing during the preliminary injunction proceedings. Instead, they entered into a Consent Order with Fashion Group providing for injunctive relief. (See Consent Order (Dkt. No. 50))

As to whether Plaintiffs' delay in adding NYC Alliance as a plaintiff reflects an effort to obtain a tactical advantage, Defendants have not articulated a theory that would support such a finding. To the extent that Defendants contend that NYC Alliance has standing, whereas Fashion Group does not (see Def. Opp. (Dkt. No. 79) at 11-13), Plaintiffs' case would have been stronger with NYC Alliance as an original plaintiff. In sum, Defendants have not articulated any tactical advantage Plaintiffs gained by not including NYC Alliance as a plaintiff ab initio.

Defendants have not carried their burden of demonstrating that Plaintiffs acted in bad faith in not naming NYC Alliance as a plaintiff at the outset of this case.

\* \* \* \*

Given that there has been no showing of undue delay or bad faith on Plaintiffs' part, and no showing that granting leave to amend would prejudice Defendants, Plaintiffs' motion to file the SAC will be granted.

## III. ATTORNEYS' FEE AWARD

Both Plaintiffs and Defendants seek an award of attorneys' fees and costs. (Pltf. Br. (Dkt. No. 76) at 23; Def. Opp. (Dkt. No. 79) at 13)

"[I]t is axiomatic that 'attorneys' fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor.'" Matsumura v. Benihana Nat. Corp., No. 06 Civ. 7609 (NRB), 2014 WL 1553638, at *3 (S.D.N.Y. Apr. 17, 2014) (quoting U.S. Fid. & Guar. Co. v. Braspetro Oil Serv. Co., 369 F.3d 34, 74 (2d Cir.2004)). However, "[f]ederal courts have identified . . . a limited number of circumstances where an award of attorney's fees as part of costs is merited under common law principles." Castillo Grand, LLC v. Sheraton Operating Corp., 719 F.3d 120, 124 (2d Cir. 2013).

One such instance derives from the district court's "'inherent power' to award attorneys' fees against the offending party . . . when it determines a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Thomas & Agnes Carvel Found. v. Carvel, 736 F. Supp. 2d 730, 766 (S.D.N.Y. 2010) (quoting Agee v. Paramount Commc'ns, Inc., 114 F.3d 395, 398 (2d Cir. 1997)). An application to shift fees based on a party's bad faith "must be justified by a finding supported by clear evidence that (1) the offending party's claims were entirely without color, and (2) the offending party's claims were made in bad faith." Mali v. Fed. Ins. Co., 720 F.3d 387, 394 (2d Cir. 2013). A finding of bad faith "'must be supported by a

high degree of specificity.'" Thomas & Agnes Carvel Found., 736 F. Supp. 2d at 766 (quoting Wolters Kluwer Fin. Servs., Inc. v. Scivantage, 564 F.3d 110, 114 (2d Cir. 2009)).

The circumstances here do not warrant an award of attorneys' fees and costs. Although Plaintiffs have prevailed on their motion to amend, Defendants' opposition was not entirely without color. Accordingly, both sides' application for an award of attorneys' fees and costs will be denied.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion to file a Second Amended Complaint is granted, and the parties' applications for an award of attorneys' fees and costs are denied. Plaintiffs are directed to file the SAC by **September 25, 2019**. The Clerk of Court is directed to terminate the motion (Dkt. No. 73).

Dated: New York, New York
September 20, 2019

SO ORDERED.

*Paul G. Gardephe*
Paul G. Gardephe
United States District Judge

11